**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| JAMES MATTHEW ROBINSON, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Case No. 2:20-cv-00111-JRG-RSP |
| | § | |
| JUSTIN CARAWAY, *et al.*, | § | |
| | § | |
| *Defendants.* | § | |
| | § | |

## SUPPLEMENTAL REPORT AND RECOMMENDATION

Plaintiff James Robinson filed suit alleging constitutional violations in connection with his arrest and detention pursuant to an arrest warrant against the individual defendants and their respective counties ("Defendants"). Dkt. No. 1. The Defendants moved to dismiss or transfer for improper venue and to dismiss for failure to state a claim. Dkt. No. 2. Robinson filed an amended complaint, Dkt. No. 5, to which Defendants reurged their motion to dismiss, Dkt. No. 7. Robinson then filed another amended complaint, Dkt. No. 23, to which Defendants again reurged their motion to dismiss, Dkt. No. 24. The undersigned issued a Report and Recommendation. Dkt. No. 30. The parties each filed objections, which have been fully briefed. Dkt. No. 31-34. In light of the additional arguments, the undersigned issues this supplemental report and recommendation which supersedes the earlier report. For the following reasons, the motions should be **DENIED** in part and **GRANTED** in part.

### I.        BACKGROUND

Plaintiff alleges that on September 28, 2016, a confidential informant advised defendant Lt. Ray Miller, an undercover officer employed by the Hamilton County Sheriff's Office, of a

heroin dealer named "Matt"[1] instrumental in distribution of illegal drugs in the Hamilton County area. Dkt. No. 18 p 18 ¶ 2. The confidential informant then arranged a meeting between Miller and the dealer for the purchase of heroin. *Id.* At approximately 5:50 p.m., Miller met the dealer. *Id.* The dealer required cash up front before meeting his supplier in Austin, Texas. *Id.* Before the dealer left for Austin, Miller and the dealer exchanged cell phone numbers. *Id.* at ¶ 4. After the dealer departed, Miller used the aid of a law enforcement database and identified the dealer as plaintiff Robinson. *Id.* Later that evening, Miller met with the dealer a second time to complete the transaction. *Id.* at ¶¶ 6-7.

On February 15, 2018, Robinson was charged with selling heroin after Hamilton County Justice of the Peace James Lively signed Miller's affidavit and warrant application. *Id.* at p 19. Around the same time, other criminal defendants associated with a white supremacy gang were similarly charged and arrested as part of an operation to curb the illegal sale of methamphetamine and heroin in the Hamilton County area. Dkt. No. 23 ¶ 15. In announcing that operation, defendant Justin Caraway, Sheriff of Hamilton County, publicized the charges against Robinson thereby associating Robinson with the white supremacist gang and the distribution of methamphetamine and heroin. *Id.* After learning of the charges, Robinson called the Hamilton County Sheriff's Office to inform the office that Robinson had never been in Hamilton and that they had mistakenly identified the suspect dealer as Robinson. *Id.* at ¶ 16. During the phone conversation, Miller claimed to be in possession of evidence including recordings implicating Robinson and insisted that Robinson turn himself in for arrest. *Id.* at ¶¶

---

[1] Pursuant to the "Restricted Narrative" of Miller's investigation, the confidential informant identified the dealer as "Matt Robinson." Dkt. No. 18 p 16. However, the narrative is undated. *Id.* The affidavit for the arrest warrant provides that a confidential informant identified the dealer by "Matt" only, and the affidavit consistently refers to the dealer as only "Matt" without a last name. Dkt. No. 18 p 18 ¶ 2.

16, 20.  According to the complaint, Miller did not thereafter investigate Robinson's claim of mistaken identity. *Id*. at ¶ 16.

On May 23, 2018, Robinson was arrested in Upshur County, in the Eastern District of Texas.  *Id.* at ¶ 17.  The following day, Robinson was presented to Upshur County Justice of the Peace Wyone Manes who entered an order that probable cause existed, informed Robinson of his rights, and set bail.  Dkt. No. 7-1.  Approximately a week later, John Rathburn, jail administrator for the Hamilton County Sheriff's Office, transported Plaintiff to the Burnet County Jail in the Western District of Texas pursuant to a custody agreement between Burnet County and Hamilton County. Dkt. 28 ¶ 17.  Robinson alleges that his protestations of innocence were numerous and known to John Rathburn, Burnet County Sheriff Calvin Boyd, Burnet County Chief Deputy Mike Cummings, and Burnet County Jail Administrator Matt Kimbler. *Id*. Beginning on August 21, 2018, Robinson began informing Burnet County jail staff that he should be released.  On or about October 3, 2018, he cited them Article 17.151 of the Texas Code of Criminal Procedure which he said required his release in the absence of an indictment within 90 days. *Id.* at ¶ 18. On October 12, 2018, Plaintiff was released after 142 days in custody without indictment.  *Id.*

In December 2018 and again in January 2019, Robinson requested information from Sheriff Caraway about the criminal charges.  *Id.* at ¶¶ 20-21.  Caraway produced Miller's undated "Restricted Narrative" of the investigation and affidavit in support of the arrest, but nothing more.  *Id.* at ¶ 20; Dkt. No. 18 pp 16-19. The Restricted Narrative indicates that the recording device Miller used during the investigation, which Miller referenced in his phone conversation with Robinson, "malfunctioned and failed to record." Dkt. No. 18 p 17. In February of 2019, Robinson notified Caraway through the district attorney that the cell phone number and license plate number belonging to the dealer could be traced to a different person who had a

similar name and appearance.  Dkt. No. 23 ¶ 22.  On September 28, 2019, the charges lapsed against Robinson for want of an indictment within three years of the date of the offense. *Id.* at ¶ 23.

The instant suit was filed on April 16, 2020, pursuant to 42 U.S.C. § 1983 alleging numerous constitutional violations against the Defendants.  *Id.* at ¶¶ 24-29.  In response, the Defendants moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(3) for improper venue, or alternatively to transfer pursuant to 28, U.S.C. § 1404(a), and further to dismiss pursuant to Rule 12(b)(6). Regarding the latter defense, Defendants argue that Robinson's complaint has not sufficiently alleged any constitutional violations and that the individual defendants are entitled to qualified immunity. Dkt. No. 7.

## II.    WAIVER OF DEFENSES

As an initial matter, Robinson asserts that the Defendants waived certain claims and arguments because the Defendants failed to raise the claims and arguments in their first motion to dismiss responsive to the original complaint.  However, Robinson has filed several amended complaints since the first motion to dismiss the original complaint.  Dkt. Nos. 5, 18, 23.  As a result, waiver is not appropriate.  See, *e.g.*, *Ultravision Techs., LLC v. Eaton Corp. PLC*, No. 2:19-CV-00290-JRG, 2019 WL 11250161, at *1 (E.D. Tex. Nov. 8, 2019). ("the filing of an amended complaint moots a motion to dismiss the original complaint.").  The Court finds no waiver by the Defendants.

## III.    IMPROPER VENUE AND TO TRANSFER

"A civil action may be brought in … a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. 1391(b)(2). Robinson alleges that he was arrested without probable cause in Upshur County, which is in the Marshall Division

4

of the Eastern District of Texas.  Accordingly, the Eastern District of Texas is a proper venue. Defendants argue that certain events took place in the Western District of Texas, which supports a conclusion that the Western District is also a proper venue. That is insufficient to show that venue in the Eastern District of Texas is improper.

Although the Defendants alternatively seek transfer, they do not discuss any of the factors set out in *In re Volkswagen of America, Inc.,* 545 F.3d 304, 315 (5th Cir. 2008) (*en banc*), and other cases to determine the relative convenience of the different venues.

Because venue is proper in both districts and because the Defendants have failed to show that the Western District of Texas is clearly more convenient, Defendants' motion to dismiss pursuant to Rule 12(b)(3) or alternatively to transfer pursuant to 28 U.S.C. § 1404(a) should be **DENIED**.

## IV.    STATUTE OF LIMITATIONS

"A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like." *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 758 (5th Cir. 2015) (citation omitted).  "Although courts look to state law for the length of the limitations period, the time at which a § 1983 claim accrues 'is a question of federal law,' 'conforming in general to common-law tort principles.' " *McDonough v. Smith*, 139 S. Ct. 2149, 2155 (2019) (citing *Wallace v. Kato*, 549 U.S. 384, 388, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007)).  In considering when a claim accrues, "the threshold inquiry in a § 1983 suit" "requires courts to 'identify the specific constitutional right' at issue." *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 920 (2017) (citing *Albright v. Oliver,* 510 U.S. 266, 271 (1994)). "Where a claim of unlawful detention [is] accompanied by allegations that the initial arrest was not supported by valid

5

probable cause," as is the case here, the Fifth Circuit has "held that analysis was proper 'under the Fourth Amendment and not under the Fourteenth Amendment's Due Process Clause.' " *Jauch v. Choctaw Cnty.*, 874 F.3d 425, 429 (5th Cir. 2017) (citations omitted). As a result, the overarching constitutional right at issue resides in the Fourth Amendment.

Second, the court must then look to common-law principles governing analogous torts. *McDonough*, 139 S. Ct. at 2156 (citing *Wallace*, 549 U.S. at 388; *Heck v. Humphrey*, 512 U.S. 477, 483 (1994)). However, common-law "principles are meant to guide rather than to control the definition of § 1983 claims, such that the common law serves more as a source of inspired examples than of prefabricated components." *McDonough*, 139 S. Ct. at 2156 (citing *Manuel*, 137 S.Ct. at 920) (internal quotation omitted). Defendants argue that the common law tort of false arrest is analogous to the facts alleged by Robinson, who on the other hand argues for malicious prosecution. False arrest is "detention *without legal process*," whereas malicious prosecution is initiated by the "*wrongful institution* of legal process." *Wallace*, 549 U.S. at 389-'90 (emphasis original); see also *Heck*, 512 U.S. at 484; *McDonough*, 139 S. Ct. at 2156; *Winfrey v. Rogers*, 901 F.3d 483, 493 (5th Cir. 2018); *Fusilier v. Zaunbrecher*, 806 F. App'x 280, 283 (5th Cir. 2020). Because Plaintiff was arrested pursuant to a warrant allegedly lacking probable cause, his claims are most analogous to malicious prosecution. *Winfrey*, 901 F.3d at 493; *Fusilier*, 806 F. App'x at 283.

Accordingly, Robinson's claim accrued on September 28, 2019, when the charges lapsed for want of an indictment. See *Heck*, 512 U.S. at 489-490, *Wallace*, 549 U.S. at 393, *McDonough*, 139 S.Ct. at 2156; *Winfrey*, 901 F.3d at 493; *Fusilier*, 806 F. App'x at 283; see also *Thompson v. Clark*, 142 S. Ct. 1332, 1335 (2022) ("To demonstrate a favorable termination of a criminal prosecution for purposes of the Fourth Amendment claim under § 1983 for malicious

6

prosecution, a plaintiff need only show that his prosecution ended without a conviction."). Texas applies a one-year statute of limitation to the commencement of a suit for malicious prosecution. Tex. Civ. Prac. & Rem. Code § 16.002. Suit was filed April 16, 2020, well within the one-year statute of limitations.

Accordingly, Defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to timely plead should be **DENIED**.

### V.    QUALIFIED IMMUNITY

To state a cause of action under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under the color of law deprived the plaintiff of a federally secured right. While courts may make analogies to state or common law torts, "claims under § 1983 are only 'for violation of rights locatable in constitutional text.' " *Morgan v. Chapman*, 969 F.3d 238, 245 (5th Cir. 2020) (citing *Castellano v. Fragozo*, 352 F.3d 939, 953-'54 (5th Cir. 2003)). A court may dismiss a well pleaded § 1983 claim that is barred by qualified immunity. Once qualified immunity is raised, the burden shifts to the plaintiff to rebut it. *Mitchell v. Mills*, 895 F.3d 365, 370 (5th Cir. 2018); *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007); *Cousin v. Small*, 325 F.3d 627, 632 (5th Cir. 2003). "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)); *Crostley v. Lamar Cty., Texas*, 717 F.3d 410, 422-24 (5th Cir. 2013) (citing *Harlow*, 457 U.S. at 818). Courts may address these inquiries in either order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

## VI.    ANALYSIS

### A. *Brady*

Robinson asserts a claim against both Miller and Caraway pursuant to *Brady v. Maryland*, 373 U.S. 83, 87 (1963).  However, he was not criminally prejudiced, such as by a finding of guilt or an increased sentence, by the suppression of exculpatory material. Accordingly, Robinson lacks standing to assert a violation.  See, *e.g.*, *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999); *United States v. Beasley*, 576 F.2d 626, 630 (5th Cir. 1978); *Phillips v. Whittington*, 2022 WL 797418, at *8 (5th Cir. 2022).

### B. Sixth Amendment Right to a Speedy Trial

Robinson also asserts a Sixth Amendment claim against Caraway and Miller.  However, the dismissal of criminal charges is the "only remedy for a violation of the Sixth Amendment right to a speedy trial." *Quinn v. Roach*, 326 Fed.Appx 280, 290 (5th Cir. 2009). In the absence of an indictment, the "court lacks the ability to grant relief," and therefore a plaintiff who was never indicted "lacks standing to assert [a] Sixth Amendment claim." *Id.* at 290. Here, Robinson was not only never indicted, but the charges against him lapsed because there was no indictment. In the absence of redressability, Robinson lacks Article III standing to assert a claim under the Sixth Amendment.

The case law upon which Robinson relies is not applicable to the circumstances here, because in both *Jones v. City of Austin*, 442 Fed. Appx. 917 (5th Cir. 2011) and *Anderson v. Galveston Cnty. Dist. Clerk*, 91 Fed. Appx. 925 (5th Cir. 2004), the plaintiffs were found guilty of criminal charges. *Jones*, 442 Fed. Appx. at 918 ("In December 2009 and January 2010, Jones was found guilty of two of [35 virtually identical] charges."); *Anderson*, 91 Fed. Appx. at 926 ("A determination that Anderson's Sixth Amendment right to a speedy trial was violated would

8

necessarily implicate the invalidity of his conviction, and Anderson has not shown that his conviction has been overturned or otherwise declared invalid."). Robinson also asserts the more recent case of *Jauch v. Choctaw County*, 874 F.3d 425 (5ᵗʰ Cir. 2017). However, that case expressly noted "the Sixth Amendment's inapplicability here" but held that the speedy trial clause was not the "only limit on prolonged pretrial detention." *Id*. at 433.

## C.  Miller

### i.  Fourth Amendment Arrest without Probable Cause

Robinson's complaint alleges that Lt. Miller violated Robinson's Fourth Amendment right to be free from arrest without probable cause.[2] Where, as here, the arrest is predicated upon a warrant, the affiant is insulated by an independent intermediary unless either (1) the affidavit for arrest "is so lacking in indicia of probable cause as to render official belief in its existence unreasonable," *Malley v. Briggs*, 475 U.S. 335, 345 (1986), or (2) probable cause is predicated upon false statements or omissions made by the affiant either knowingly and intentionally or with reckless disregard for the truth, and they are material to the probable cause finding, *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). See also *Hart v. O'Brien,* 127 F.3d 424, 448 (5th Cir.1997), *abrogated on other grounds by Kalina v. Fletcher,* 522 U.S. 118 (1997) (extending liability under *Franks* to include omissions); *Wilson v. Stroman*, 33 F.4th 202, 208 (5th Cir. 2022) (compiling Fifth Circuit cases that "recognized *Franks* and *Malley* as functional exceptions to the independent intermediary doctrine"). These Fourth Amendment rights were clearly established when Miller swore his affidavit.

When analyzing Miller's affidavit for probable cause, the court may consider not only the facts and circumstances, but also the reliability and credibility of the information and source. See

---

[2] Plaintiff's Complaint (at ¶ 24) states: "The Plaintiff was arrested and detained without probable cause …" (Dkt. No. 23 at 10), and also "Defendant Caraway ratified the wrongful arrest." (Dkt. No. 23 at 11). It is not clear why Plaintiff argues "This is not a case about wrongful arrest." (Dkn. No. 34 at 1).

*Winfrey*, 901 F.3d at 494 (citing *Franks*, 438 U.S. at 165) ("[T]he warrant requirement is meant 'to allow the magistrate to make an independent evaluation of the matter.' It requires affiants to 'set forth particular facts and circumstances underlying the existence of probable cause,' including those that concern the reliability of the information and the credibility of the source …") (internal citations omitted).

Miller's affidavit states that a confidential informant arranged a meeting between Miller and "an individual name [*sic*] 'Matt' who was instrumental in the distribution of Heroine [*sic*] in and around the Hamilton County area." Dkt. No. 18 p 18 ¶ 2. After initiating a controlled purchase from "Matt," Miller "use[d] the aid of Law Enforcement records to establish positive identification of 'Matt' as being James Matthew Robinson." *Id.* at ¶ 4. Further, the affidavit provides that Robinson lives in White Oak, Texas. *Id.* at 19 (bottom left corner). The affidavit is silent regarding the specific identifiers or other criteria entered to narrow the scope of the database search, or methods employed to eliminate false results, such as a comparison of cell phone numbers, vehicles, license plate numbers or last known addresses.

Without more, the affidavit on its face represents that Miller merely searched for "Matt" in a law enforcement database and thereafter positively identified Robinson as the suspect. Considering that "Matt" is a common name, such a search would return a multitude of individuals with "Matt" or derivatives thereof somewhere in their name. Among this multitude, Miller somehow identified Robinson, a resident of White Oak, Texas, as the "instrumental" heroin dealer in Hamilton, Texas. For perspective, the municipalities are nearly 200 miles apart as the crow flies. Miller claimed this "positive identification" without providing in the affidavit any facts or circumstances connecting Robinson to Hamilton, Texas or connecting the suspect to White Oak, Texas.  The Court finds that the affidavit lacks sufficient indicia of probable cause to

conclude that Robinson was the dealer. *Malley*, 475 U.S. at 345. The statement by Miller in the affidavit that Miller "was able to use the aid of Law Enforcement records to establish *positive* identification of 'Matt' as being James Matthew Robinson" is plausibly alleged to be a knowing falsehood.

Even if this Court were to assume that Miller's affidavit, despite the flaws just discussed, was sufficient to establish probable cause as to the identity of the suspect, the Court would find that Robinson has pleaded facts sufficient to support a claim under *Franks* in light of the Fifth Circuit's decision in *Terwilliger v. Reyna*, 4 F.4th 270, 281-83 (5th Cir. 2021). See also *Wilson*, 33 F.4th at 206-07. In *Terwilliger*, the plaintiffs denied involvement in the criminal activity described in the warrant, denied affiliation with the gangs involved, and alleged that the defendants "deliberately excluded relevant information that would have weighed against … probable cause, such as video evidence, witness interviews, and membership" in clubs independent of and not affiliated with the gangs committing the shooting. 4 F.4th at 282. The Fifth Circuit's review assumed that the allegations of the warrant equated to a false statement or omission, corrected the underlying affidavit to include information from video evidence, witness interviews and membership affiliations, and then concluded that the corrected affidavit was insufficient to establish probable cause against the plaintiffs. *Id.* at 283-84.

As was the case in *Terwilliger*, Robinson denies involvement in the controlled sale described in the affidavit and alleges that Miller excluded from the affidavit the suspect's vehicle information and Robinson's cell phone number, vehicle information, and last known address. After correcting Miller's affidavit to include any of this information, the affidavit is even more insufficient to establish probable cause that the suspect dealer was Robinson.

Accordingly, Miller is not entitled to qualified immunity on the Fourth Amendment claim.

### ii. Fourteenth Amendment Right of Access to the Courts

Robinson's briefing also presents a claim of denial of access to the courts, which is supported by the allegation that Miller destroyed exculpatory evidence. See Dkt. No. 18 ¶ 21. "[T]he civil right of access to the courts is a well-established and fundamental right protected by the United States Constitution." *U.S. v. McRae*, 702 F.3d 806, 829 (citing *Ryland v. Shapiro*, 708 F.2d 967, 971 (5th Cir. 1983)). Denial of access claims are either forward-looking or backward-looking. *Id.* at 830. Robinson relies on the backward-looking variety. Dkt. No. 20 p 2. "To maintain a backward-looking claim, a plaintiff must identify (1) a nonfrivolous underlying claim; (2) an official act that frustrated the litigation of that claim; and (3) a remedy that is not otherwise available in another suit that may yet be brought." *United States v. McRae*, 702 F.3d 806, 830-31 (5th Cir. 2012); *Waller v. Hanlon*, 922 F.3d 590, 602 (5th Cir. 2019) (citing *McRae*).

Robinson's allegation that Miller destroyed evidence is plausible. The complaint alleges that during the pre-arrest phone call between Robinson and Miller, Miller advised that he possessed at least one video recording of the dealer, text messages, and other evidence implicating Robinson as the dealer. Dkt. No. 18 ¶ 20. That conversation occurred in 2018 after Robinson was charged with distribution. After Robinson was released, his counsel requested documentation related to the investigation. *Id.* at ¶ 21. Defendants produced an undated "Restricted Narrative" detailing the 2016 investigation and Miller's affidavit. *Id.* Notably however, the narrative provides that the recording device malfunctioned resulting in a failure to record any aspect of the transaction. If the narrative was made before Robinson's conversation

12

with Miller, Miller plausibly would have known that no recording existed. Thus, there is a clear contradiction between the narrative's account and Miller's recollection of recorded evidence, which is plausibly explained by Robinson's allegation that Miller destroyed the evidence.  Next, destruction of exculpatory evidence clearly frustrates Robinson's claim that he was arrested without probable cause. Finally, Robinson argues that he could have secured a dismissal of the charges before the charges lapsed for failure to indict.  Dkt. No. 20 p 2. Such a remedy is not presently available, but would have been available during criminal proceedings.

Accordingly, Miller is not entitled to qualified immunity on this claim.

### D.  Caraway

#### i.  Conspiracy with Miller

Robinson claims that Caraway conspired with Miller to cover up the wrongful arrest of Robinson and that Caraway and Miller destroyed video evidence and internal communications related to Miller's investigation as discussed above. Dkt. No. 23 ¶ 21. Robinson claims that Caraway's actions were motivated by a desire to not suffer any embarrassment related to the operation to curb the illegal sale of drugs by white supremacist. *Id.* The Defendants' briefings do not address this specific claim, and instead analyze the claims against Miller and Caraway in tandem. See, Dkt. No. 7 pp 5-10, Dkt. No. 9 p 4, Dkt. No 19 p 2-3, Dkt. No. 24 pp 2-3, Dkt. No. 32 pp 2-6.  The Complaint does not simply assert vicarious liability against Sheriff Caraway, but instead plausibly alleges his personal participation in the violation of clearly established rights.

Accordingly, Caraway is not entitled to qualified immunity for these claims.

#### ii.  Reputational Harm

The complaint also alleges that Caraway caused additional reputational harm separate from that caused by Miller. Specifically, Robinson alleges that Caraway erroneously associated

Robinson with a white supremacist gang and heroin distribution causing damage to his reputation and ability to obtain employment. Defendants' motion summarily concludes that Robinson has not identified any false statement to support a claim for reputational harm. Dkt. No. 7 pp 11-12. While it may not have been false to announce the existence of an outstanding warrant, the association of Robinson with a white supremacist drug ring is allegedly a false statement, and it is plausible that such a false statement could hinder Robinson's ability to find employment. *Phillips*, 711 F.2d at 1221. Here, Robinson claims that the false arrest, detention, and outstanding warrant hindered his ability to find employment, and a "government-imposed stigma that closes job opportunities is actionable under section 1983." *Phillips v. Vandygriff*, 711 F.2d 1217, 1221 (5th Cir. 1983), on reh'g in part, 724 F.2d 490 (5th Cir. 1984) (citing Board of Regents v. Roth, 408 U.S. 564 (1972)).

### E.  Hamilton County

A single decision may create municipal liability if that decision is made by a final policymaker responsible for the constitutional violation. *Woodard v. Andrus*, 419 F.3d 348, 352 (5th Cir.2005). In Texas, sheriffs are final policymakers for their respective counties. *Turner v. Upton County, Tex.*, 915 F.2d 133, 136-137 (5th Cir. 1990). Accordingly, municipal liability may attach for at least the allegations described above relating to Sheriff Caraway.

### F.  Rathburn, Boyd, Cummings, and Kimbler

Robinson's complaint alleges that Rathburn, Boyd, Cummings, and Kimbler violated Robinson's Fourth Amendment rights to be free from detention without probable cause and Robinson's Fourteenth Amendment right to be free from detention without due process. Relevant to each claim are the allegations that Robinson repeatedly protested his innocence, and that Robinson was detained beyond what is allowed by state statute. In many ways, the

14

allegations presented by Robinson are similar to those in *Manuel v. City of Joliet, Ill.*, 580 U.S. 357 (2017).

In *Manuel*, police officers searched Elijah Manuel during a traffic stop and found a vitamin bottle containing pills. *Id.* at 360. Suspecting the pills to be illegal drugs, the officers conducted a field test the results of which were negative. *Id.* Despite the negative result, the officers arrested Manuel and took him to the police station. *Id.* At the police station, an evidence technician tested the pills and got the same negative result. *Id.* at 361. Nonetheless, the technician claimed in his report that one of the pills tested positive for ecstasy. *Id.* Further, one of the arresting officers also reported that, based on his training and experience, he knew the pills to be ecstasy. *Id.* On the basis of those false statements, another officer filed a sworn complaint charging Manuel with unlawful possession of a controlled substance. *Id.* Relying exclusively on that complaint, a county court judge found probable cause to detain Manuel pending trial. *Id.* While in jail, the police laboratory retested the seized pills and issued a report concluding that they contained no controlled substances. *Id.* Despite these results, Manuel's detention continued for more than another month. *Id*. at 361-362. After 48 days in pretrial detention, the charges were dismissed, and Manuel was released. *Id.* at 362.

Manuel filed a § 1983 claim against the municipality and several police officers involved for violating Manuel's Fourth Amendment rights for his arrest without probable cause and his continued detention thereafter. *Id*. Among other reasons, the district court dismissed Manuel's claim based upon binding Seventh Circuit case law that pretrial detention following the start of legal process could not give rise to a Fourth Amendment claim. *Id.* Invoking similar case law, the Seventh Circuit affirmed the dismissal of Manuel's claim on the basis that a Fourth

15

Amendment claim is improper once a person is detained pursuant to due process and a finding of probable cause. *Id.* at 363.

The Supreme Court of the United States granted *certiorari* because the Seventh Circuit's view was an outlier among the Courts of Appeal, with ten others taking opposite views.[3] *Id* at 363-364. The Supreme Court's conclusion on the issue bears recitation here.

> [C]ontrary to the Seventh Circuit's view, Manuel stated a Fourth Amendment claim when he sought relief not merely for his (pre-legal-process) arrest, but also for his (post-legal-process) pretrial detention. Consider again the facts alleged in this case. Police officers initially arrested Manuel without probable cause, based solely on his possession of pills that had field tested negative for an illegal substance. So (putting timeliness issues aside) Manuel could bring a claim for wrongful arrest under the Fourth Amendment. And the same is true (again, disregarding timeliness) as to a claim for wrongful detention—because Manuel's subsequent weeks in custody were also unsupported by probable cause, and so also constitutionally unreasonable. No evidence of Manuel's criminality had come to light in between the roadside arrest and the County Court proceeding initiating legal process; to the contrary, yet another test of Manuel's pills had come back negative in that period. All that the judge had before him were police fabrications about the pills' content. The judge's order holding Manuel for trial therefore lacked any proper basis. And that means Manuel's ensuing pretrial detention, no less than his original arrest, violated his Fourth Amendment rights. Or put just a bit differently: Legal process did not expunge Manuel's Fourth Amendment claim because the process he received failed to establish what that Amendment makes essential for pretrial detention—probable cause to believe he committed a crime.

*Id.* at 369 (footnotes omitted).

Shortly after the *Manuel* decision issued, the Fifth Circuit was presented with a variation of facts for which the Court probed the boundaries of the Fourth and Fourteenth Amendments. In *Jauch v. Choctaw County*, a grand jury indicted Jessica Jauch for the sale of controlled substances, thereby predicating her arrest on probable cause. 874 F.3d 425 (5th Cir. 2017). The Fifth Circuit found the Supreme Court's decision in *Manuel* to be consistent with its Fourth

---

[3] *Hernandez–Cuevas v. Taylor*, 723 F.3d 91, 99 (1st Cir. 2013) *Singer v. Fulton County Sheriff*, 63 F.3d 110, 114–118 (2nd Cir. 1995); *McKenna v. Philadelphia*, 582 F.3d 447, 461 (3rd Cir. 2009); *Lambert v. Williams*, 223 F.3d 257, 260–262 (4th Cir. 2000); *Castellano v. Fragozo*, 352 F.3d 939, 953–954, 959–960 (5th Cir. 2003) (*en banc*); *Sykes v. Anderson*, 625 F.3d 294, 308–309 (6th Cir. 2010); *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1126–1127 (9th Cir. 2002); *Wilkins v. De–Reyes*, 528 F.3d 790, 797–799 (10th Cir. 2008); *Whiting v. Traylor*, 85 F.3d 581, 584–586 (11th Cir. 1996); *Pitt v. District of Columbia*, 491 F.3d 494, 510–511 (DC Cir. 2007).

Amendment precedent. *Id.* at 429. Summarizing that precedent, the Fifth Circuit observed that "where a claim of unlawful detention was accompanied by allegations that the initial arrest was not supported by valid probable cause, [the Court] held that analysis was proper 'under the Fourth Amendment and not under the Fourteenth Amendment's Due Process Clause.'" *Id.* (quoting *Bosarge v. Mississippi Bureau of Narcotics*, 796 F.3d 435, 441 (5th Cir. 2015), and further citing *Castellano v. Fragozo*, 352 F.3d 939, 953 (5th Cir. 2003) (*en banc*)). Because Jauch's arrest was predicated upon probable cause, the Fifth Circuit's analysis was limited to the Fourteenth Amendment.

In the instant case, Robinson clearly challenges the probable cause finding underlying the warrant for his arrest but also his pretrial detention after the finding of probable cause by the justice of the peace. "[P]retrial detention can violate the Fourth Amendment not only when it precedes, but also when it follows, the start of legal process in a criminal case." *Manuel*, 580 U.S. at 367-368; see also *Bosarge*, 796 F.3d at 441; *Castellano*, 352 F.3d at 953. Accordingly, the finding of probable cause by the justice of the peace should not convert Robinson's claims against Rathburn, Boyd, Cummings, and Kimbler into a Fourteenth Amendment Due Process Clause claim. It remains under the Fourth Amendment. Under the Fourth Amendment, the relevant inquiry is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." *Graham v. Connor*, 490 U.S. 386, 397 (1979). A similar analysis under the Fourteenth Amendment would, however, reach the same result in this case.

Robinson came into Rathburn's custody for transportation to Burnett County Jail and into Boyd's, Cummings', and Kimbler's custody for detention at the Burnett County Jail. There is no allegation that these defendants played any role in the investigation leading to his arrest. Their involvement began after the judicial order finding probable cause and ordering that Robinson

"remain in custody" unless he could post the bond set by the Justice of the Peace.  Dkt. No. 7-1. Based upon that order, it was objectively reasonable for Rathburn, Boyd, Cummings, and Kimbler to maintain custody of Robinson despite his protestations of innocence. The fact that a pretrial detainee protests that he is innocent cannot reasonably be expected to cause jailers, or their sheriff, especially those who are merely transporting him or holding the detainee under an overflow contract with another county, to take any particular action to investigate his detention. Even if they had done so, they would have learned that there was a warrant and he had been presented to a judge following his arrest.

Robinson cites *Porter v. Epps*, 659 F.3d 440 (5th Cir. 2011) for support.  But *Porter* was a case where a sentenced prisoner was held beyond the expiration of his sentence by a jailer who failed to properly note the date.  There is no claim here that defendants "negligently established a record keeping system in which errors of this kind are likely" as in *Porter*.  Unlike Porter, Robinson was not sentenced to a particular term, he was being held until his trial.  There is no allegation, certainly no plausible allegation, that Burnet County officials had a duty to monitor whether Robinson was timely indicted.  Indeed, the allegation is that, on October 3, 2018, when Robinson told those officials of Article 17.151, they contacted Hamilton County officials and Robinson was released the next week.  Dkt. No. 23 at 6.  Even if the Burnet County officials were deemed to have held Robinson in violation of his rights, the Fifth Circuit "has never considered a situation in which a defendant is promptly afforded counsel and a bond hearing, but is then held beyond the deadline for formal indictment." *Terry v. Hubert*, 609 F.3d 757, 763 (5th Cir. 2010). In the absence of clearly established Fifth Circuit law providing otherwise (which plaintiff does not cite and the Court has not found), Rathburn, Boyd, Cummings, and Kimbler are entitled to qualified immunity against this claim.

### G. Burnet County

To establish municipal liability, a plaintiff must show "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy (or custom)." *Pineda v. City of Hous.*, 291 F.3d 325, 328 (5th Cir. 2002) (quoting *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001)). Alternatively, a single decision may create municipal liability if that decision is made by a final policymaker responsible for the constitutional violation. *Woodard v. Andrus*, 419 F.3d 348, 352 (5th Cir.2005).

A "municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train," *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 822–823 (1985)), and requires a showing of "deliberate indifference to the rights of persons with whom the untrained employees come into contact," *id.* (citing *Canton v. Harris*, 489 U.S. 378, 388 (1989)). In the briefing, Robinson argues that "the liability of Burnet County is entirely derivative of the liability of Defendant Boyd… If Defendant Boyd is not liable, then there is no basis for Burnet County's liability." Dkt. No. 31 at 4. As noted above, under *Terry v. Hubert,* Boyd is qualifiedly immune.

The only relevant allegations against Boyd in the Third Amended Complaint are in paragraphs 17 to 19 of the Third Amended complaint. There it is alleged that Sheriff Boyd had not "adopted any policies for investigating complaints of mistaken identity, nor had they trained their subordinates to properly respond to complaints of mistaken identity." Later, that he "failed to implement any policies or training to prevent the detention of inmates beyond the period

allowed by law." Dkt. No. 23 at 6-7. These are entirely conclusory allegations that amount to nothing more than an attempt to impose vicarious liability on the Sheriff and the County for what are, at best, individual acts of negligence. Such liability is not permitted by *Monell* under § 1983. The complaint does not come close to plausibly alleging deliberate indifference or that the absence of a policy or training was the moving force behind the alleged unconstitutional act. Accordingly, the motion should be granted as to Burnet County.

## VII. CONCLUSION

For the reasons discussed above, it is RECOMMENDED that Defendants' motions to dismiss, Dkt. Nos. 2, 7 & 24, be **DENIED in part** and **GRANTED in part** as follows:

1) The motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(3) or alternatively to transfer pursuant to 28 U.S.C. § 1404(a) should be **DENIED**.

2) The motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) based on the statute of limitations should be **DENIED**.

3) The motion to dismiss Sheriff Caraway and Lt. Miller should be **DENIED** as they are not entitled to qualified immunity.

4) The motion to dismiss as to Rathburn, Boyd, Cummings, and Kimbler should be **GRANTED** as they are entitled to qualified immunity.

5) The motion to dismiss should be **DENIED** as to Hamilton County and **GRANTED** as to Burnet County.

A party's failure to file written objections to the findings, conclusions, and recommendations contained in this report within 14 days bars that party from *de novo* review by the District Judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions

accepted and adopted by the district court. Fed. R. Civ. P. 72(b)(2); *see Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*). Any objection to this Supplemental Report and Recommendation must be filed in ECF under the event "Objection to Report and Recommendations [cv, respoth]" or it may not be considered by the District Judge.

    **SIGNED this 5th day of July, 2023.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE